WAKE STONE CORP. v. HARGROVE

[101 N.C. App. 490 (1991)]

---

WAKE STONE CORPORATION, PLAINTIFF v. NORWOOD O. HARGROVE AND WIFE, NANCY H. HARGROVE, DEFENDANTS

No. 8910SC1125

(Filed 5 February 1991)

1. **Vendor and Purchaser § 5.1 (NCI3d)— specific performance of contract to convey realty—route of highway—no mutual mistake**

In an action for specific performance of a contract to convey real property, the evidence was insufficient to support relief for defendants based on mutual mistake where defendants alleged that a condition prerequisite to their conveyance of property was written notice from the Town of Knightdale that the relocation of Highway 64 would not go through property on which their home was located; assuming that the legal authority of the Town of Knightdale rather than the Department of Transportation to determine the final location of Highway 64 was an assumption basic to the defendants' decision to contract, it was uncontroverted that plaintiff did not lead defendants into that assumption; if defendants' initial assumption about the authority of Knightdale over the street system within and around its boundaries was mistaken, defendants and plaintiff had equal and adequate means of correcting the mistake; and if defendants were mistaken about the legal authority of Knightdale to give the notice required by the contract, that mistake was not a basic assumption of plaintiff in entering the contract.

**Am Jur 2d, Vendor and Purchaser §§ 54, 56, 483.**

2. **Brokers and Factors § 5 (NCI4th)— mistake of real estate agent—plaintiff not bound**

In an action for specific performance of a contract to convey real property, plaintiff could not be bound by the mistake, if any, of its real estate agent regarding the operation of a condition in the contract between plaintiff and defendants, since the condition in question was inserted at defendants' insistence and was drafted by defendants and the agent in defendants' living room, and the real estate agent's contract with plaintiff contained no terms which could be construed as giving him authority to do more than convey offers to and from plaintiff.

**Am Jur 2d, Brokers §§ 3, 30.**

APPEAL by defendants from judgment entered 15 May 1989 by *Judge Orlando Hudson* in WAKE County Superior Court. Heard in the Court of Appeals 31 May 1990.

*McMillan Kimzey & Smith, by James M. Kimzey and Katherine E. Jean, for plaintiff appellee.*

*Kirk, Gay, Kirk, Gwynn & Howell, by Clarence M. Kirk and Katherine M. McCraw, for defendant appellants.*

COZORT, Judge.

Seeking specific performance of a contract to convey real estate, plaintiff sued defendants. After a jury found that defendants had breached the contract, the trial court ordered specific performance and defendants appealed. We find no error.

On 31 March 1987, plaintiff Wake Stone Corporation (Wake Stone) and defendants Norwood and Nancy Hargrove (the Hargroves) entered into a contract to exchange parcels of property. The contract consisted of two parts: the Hargroves would buy a tract of land, approximately 21.5 acres in size, owned by Wake Stone and pay for it by conveying a tract of land, approximately 31 acres in size, which they owned; simultaneously Wake Stone would purchase the 31-acre tract owned by the Hargroves by conveying to them the 21.5-acre tract owned by the corporation. The entire transaction was subject to a number of conditions, including condition "G," which provided that closing was contingent upon the Hargroves "receiving written notice from the Town of Knightdale

that the Highway 64 relocation will not take the northern route through the subject property being transferred or that [tract] owned by [the Hargroves] which is Parcel #1 on the Wake County Book of Maps #510." The tract identified in Condition G as Parcel #1 is adjacent to or nearby the 31 acres that the Hargroves contracted to convey. The contract set no time limit for the fulfillment of Condition G, providing only that closing "will take place within thirty (30) days after satisfaction of Condition G."

On 27 May 1987, the Hargroves wrote to John Bauchman (Bauchman), the realtor who was brokering the property exchange, to inform him and John Bratton (Bratton), president of Wake Stone, that

> [i]f section G in the contract is not satisfied to our satisfaction by May 31, 1987, you can consider the contract void.

> We think 60 days from the date the contract was signed is sufficient time to complete this.

At trial Norwood Hargrove testified that he wrote the letter shortly after learning that the North Carolina Department of Transportation, rather than the Town of Knightdale, had final authority over the relocation of Highway 64. On 11 June 1987, in reply to the Norwoods' letter, Bauchman wrote: "I have contacted John Bratton regarding your request to void the contract with him, on the basis that Section G in the contract has not been satisfied. Mr. Bratton indicated that he had accepted the contracts with the terms as proposed by you and has no interest in terminating the contract at this time."

On 7 January 1988, Dennis Gabriel, town manager of Knightdale, wrote to John Bratton: "Per your request, the Knightdale Town Council at its December 7, 1987 meeting removed the northern route of Highway 64, Alternate 3, from its Thoroughfare Plan. Presently under consideration are Alternates 1 and 2 which are south of U. S. 64." On 10 February 1988, the town manager sought to clarify his earlier letter and wrote to Bratton, stating that

> a final corridor choice was delayed until November, 1988 when further information will be available concerning the location of the proposed Outer Loop. As a result of this action the Council has not ruled out any potential corridor for the 64 bypass and therefore I would not have you misinformed as to the potential for a northern bypass corridor being accepted

that could impact on the parcels referenced in that letter. Further, I do not feel that any definitive statement can be made as to the location of the 64 bypass . . . .

On 26 February 1988, the town manager again wrote to Bratton; he noted that

[b]ecause of Parcel 1 of the Tax Map 501's proximity to U. S. 64 and its location opposite Raleigh Federal Savings and Loan development site, it will not be possible for any corridor of 64 bypass to bisect this property. This property is located opposite high density commercial development as well as being located to [sic] close to U.S. 64 to cause it to be impacted by any northern expressway that might parallel existing 64.

Also, because of the Parcel 4 location next to the new Bolton subdivision and the fact that a northern bypass would have to be located north of Forestville Road to miss the existing quarry pit west of this Parcel, there is no way that any northern route could be locked [sic] on Parcel 4 Tax Map 501.

Please accept my apologies for any inconvenience that I may have cause[d] by my mistake in identification of Parcel 1, Tax Map 501 and further please disregard the comments made in my February 10, 1988 letter.

In February and again in March 1988, Wake Stone informed the Hargroves that it considered Condition G satisfied, tendered performance of the contract, and requested the Hargroves to appear for a closing of the transaction. Before trial the parties stipulated, pursuant to Rule 16 of the North Carolina Rules of Civil Procedure, that the "defendants have refused to accept the tender and have refused to make conveyance of the land to be exchanged." At trial Bratton testified that Wake Stone remained ready, willing, and able to perform its part of the contract.

On 19 April 1988, Wake Stone filed a complaint alleging breach of contract by the Hargroves. The Hargroves answered, and after further pleading the case went to trial on 8 May 1989. The sole issue submitted to the jury was: "Did the defendant[s] breach the contract?" The jury answered "yes." On 15 May 1989, the trial court entered judgment for the plaintiff, decreeing specific performance of the contract.

[1] The issue dispositive of this appeal is whether the trial court erred in denying defendants' motion for a directed verdict based on mutual mistake. Defendants contend that both parties were mistaken as to the authority of the Town of Knightdale to determine the routing of Highway 64 and that such authority was a basic assumption on which the contract was made. Without reaching the issue of whether the town had the authority to give the notice contemplated by Condition G of the contract, we find that the facts presented by the case below do not support relief for the defendants based on mutual mistake.

Where mutual mistake is alleged, whether the nonaggrieved party participated, innocently or intentionally, in causing the mistake is one of the more important factors courts must examine. 3 A. Corbin, *Contracts* § 608 (1960). Our Supreme Court emphasized this consideration in *Marriott Financial Services v. Capitol Funds*:

A unilateral mistake, unaccompanied by fraud, imposition, undue influence, or like oppressive circumstances, is not sufficient to avoid a contract or conveyance. The following pertinent statement aptly summarizes the requirement of mutuality:

. . . [O]rdinarily[,] a mistake, in order to furnish ground for equitable relief, must be mutual; and as a general rule relief will be denied where the party against whom it is sought *was ignorant that the other party was acting under a mistake and the former's conduct in no way contributed thereto* . . . .

288 N.C. 122, 136, 217 S.E.2d 551, 560 (1975) (citations omitted) (emphasis in original).

Evidence in the case below shows that the condition (about the effect of which the defendants contend both parties were mistaken) was included in the contract by the defendants. At trial the chairman of the plaintiff corporation testified as follows:

Q. When you received this contract, Plaintiff's Exhibit 7, was it already signed by Nancy and Norwood Hargrove?

A. Yes, it was.

Q. Did you see them sign it?

A. No, I did not.

Q. Did you persuade them to sign it?

A. No.

Q. Did you have any communication with them at all—.

A. No.

Q. —concerning this transfer just prior to their signing it?

A. No, I did not.

* * * *

Q. Looking at Paragraph G it says: Closing is contingent upon seller receiving written notice from the Town of Knightdale that the Highway 64 relocation would not go through the subject property or the Hargroves' home place.

When you saw that, were you familiar with that condition prior to seeing that there?

A. No.

* * * *

Q. What was your reaction when you saw that condition? Tell me what you felt as a chairman of Wake Stone entering in this transaction? How did that affect you?

A. Well, it was just one of a number of conditions which Norwood required and we were agreeable to signing it with that condition on it.

Q. Did you feel that it might be proper for you to fulfill that condition in the future at the time you signed that?

A. Well, I—I don't think I had any knowledge or feeling one way or the other whether we could have. But we are willing to try.

Regarding Condition G, the realtor who brokered the property exchange testified as follows:

Q. Where did Condition G come from?

A. That was based on the desire on the part of the Hargroves to make certain that the Highway 64 relocation did not go through the home that they were living in. And that was inserted as a condition so that the transaction would not take place unless that road relocation through their property was eliminated.

Q. At whose initiative was that inserted, Hargroves['] or Wake Stone's?

A. Hargroves'.

Assuming that the legal authority of the Town of Knightdale (rather than the Department of Transportation) to determine the final location of Highway 64 was an assumption basic to the defendants' decision to contract, it is uncontroverted that the plaintiff did not lead the defendants into that assumption. Moreover, if the defendants' initial assumption about the authority of Knightdale over the street system within and around its boundaries was mistaken, the defendants and the plaintiff had equal and adequate means of correcting the mistake. Finally, if the defendants were mistaken about the legal authority of Knightdale to give the notice contemplated by Condition G, that mistake was not a basic assumption of the plaintiff in entering into the contract.

[2]   In their brief the defendants characterize John Bauchman as the plaintiff's agent. They contend that Bauchman "conducted negotiations for Mr. Bratton" and that Bauchman "believed at the signing of the contracts that the town had the right to make the decision where the road was going." Thus, they imply that Bauchman's alleged mistake must be attributed to Wake Stone as Bauchman's principal in the negotiations.

In North Carolina a real estate "agent's authority from his principal to sell real estate is not to be readily inferred, but exists only where the intention of the principal to give such authority is plainly manifest." *Forbis v. Honeycutt*, 301 N.C. 699, 703, 273 S.E.2d 240, 242 (1981). Offers vary as to price, financing, date of possession, and numerous other conditions, and a "decision on such matters would normally be for the owners of real estate, not their agents." *Id.* at 705, 273 S.E.2d at 243.

Applying these principles to the case below, we note that Norwood Hargrove testified that the property exchange had its origin in early 1987:

Q. All right. Tell us about the first approach you had from Mr. Bauchman about any land for any reason?

A. The first approach about land?

Q. Yes, sir.

A. Okay. He came to my house one morning. He had been before but he, like he said, you know, he came to introduce himself. But later he came back and he says, Mr. Hargrove, we've got some people that want to put a Bible College in the community. Do—Would you be interested in trading some land?

And I asked him which land and he explained to me that—that he had been to see Mr. Bratton and Mr.—and had tried to buy some land to put a Bible College on and Mr. Bratton was not interested but he told him that he would be interested in swapping some land.

While Hargrove testified that Bauchman persisted "constantly from then on" in promoting the exchange, it is uncontroverted that Condition G was inserted in the contract at the insistence of the Hargroves. Bauchman testified that the condition was drafted by the Hargroves and him in their living room and that, upon taking the Hargroves' offer to Bratton, he explained Condition G as "a critical aspect as far as [the Hargroves'] willingness to deal."

We note further that Bauchman entered into commission contracts with both the Hargroves and Wake Stone. Bauchman's commission contract with Wake Stone provides solely that Wake Stone will pay a $10,000 commission at closing to Bauchman's real estate firm; it contains no terms that can be construed as giving Bauchman authority to do more than convey offers to and from Wake Stone. On these facts we hold that Wake Stone cannot be bound by Bauchman's mistake, if any, regarding the operation of Condition G in the contract between the Hargroves and Wake Stone.

We have reviewed the defendants' two remaining assignments of error and have found them to be without merit.

In the case below, we find

No error.

Judges ARNOLD and PHILLIPS concur.